UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v

TWENTY SEVEN THOUSAND
DOLLARS IN U.S. CURRENCY
($27,000.00), AND THIRTY NINE
THOUSAND NINE HUNDRED DOLLARS
IN U.S. CURRENCY($39,900.00)

        Defendants *in Rem*.

_____/

Civil No.
Honorable
Magistrate Judge

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through BARBARA L. McQUADE, United States Attorney for the Eastern District of Michigan, and LINDA AOUATE, Assistant United States Attorney, and states upon information and belief in support of this Complaint for Forfeiture *in rem* that:

### JURISDICTION AND VENUE

1. This is an *in rem* civil forfeiture action brought by the United States of America pursuant to 21 U.S.C. § 881(a)(6).

2. The Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 as this action is being commenced by the United States of America as Plaintiff.

3. This Court has jurisdiction over this forfeiture action, pursuant to 28 U.S.C. § 1355(b)(1)(A), as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Government's claims occurred in the Eastern District of Michigan.

5. Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(b), as the defendant *in rem* was found and was seized in the Eastern District of Michigan.

## DEFENDANTS *IN REM*

6. The defendants *in rem* in this action consist of Twenty Seven Thousand Dollars in United States Currency ($27,000.00), and Thirty Nine Thousand Nine Hundred Dollars in United States Currency ($39,900.00) (collectively referred to herein as the "defendant currency").

7. The $27,000.00 in U.S. Currency was seized during a traffic stop on or about August 25, 2010, by task force officers with the Oakland/Macomb Interdiction Team. The $39,900.00 in U.S. Currency was seized by agents/task force officers with the United States Drug Enforcement Administration ("DEA") on or about August 25, 2010, pursuant to a State of Michigan authorized search warrant that was executed at a home located at 50983 Summit View Drive, Macomb Twp., Michigan.

8. The defendant currency has since been deposited into the Department of Justice Seized Asset Deposit Fund, maintained by the United States Marshals Service at the Federal Reserve Bank.

## STATUTORY BASIS FOR CIVIL FORFEITURE

9. Title 21, United States Code, Section 881, governs the civil forfeiture of property which constitutes or is derived from the proceeds of narcotics crimes, or which was used to facilitate narcotics crimes:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them....[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

## FACTUAL BASIS IN SUPPORT OF FORFEITURE

10. Plaintiff asserts that the defendant currency is forfeitable to the United States of America as currency which was furnished, or was intended to be furnished, in exchange for a controlled substance; as proceeds traceable to such an exchange; and/or as monies which were used or were intended to be used to facilitate a violation of Title 21 of the United States Code and is, therefore, subject to seizure and civil forfeiture pursuant to 21 U.S.C. § 881(a)(6). The facts supporting this evidentiary determination include, but are not limited to, the following:

   a. On or about August 25, 2010, officers conducted a traffic stop on a green 2010 Ford Explorer being driven by Edgar Wooley ("Wooley") on westbound M-14 near Beck Road. Officers noticed that Wooley was displaying nervous

    characteristics, including body tremors and gasping for breath. Wooley was asked if he possessed any illegal drugs or large amounts of currency in the vehicle. Wooley told officers that he had "four thousand dollars" in a brown bank bag in the center console. Wooley told officers that the money was his, but he could not provide any explanation as to how he acquired it. Wooley claimed that there was no other money or drugs in the Explorer.

b.    Officers utilized their K9 Finn, who is trained to detect the odor of controlled substances, to conduct a free air sniff of the vehicle. K9 Finn positively alerted to the presence of narcotics coming from inside the Explorer and a probable cause search of the vehicle was conducted.

c.    Officers found a white plastic Meijer's shopping bag on the rear seat. The bag contained one (1) pair of blue jeans which covered two (2) gray duct-taped bundles, which officers know is consistent with the packaging of bulk currency or narcotics. Officers tore the duct tape off one of the bundles and found a large amount of U.S. currency that was rubber banded together and heat sealed in clear plastic "Food Saver" type bags. An official count of the currency was later conducted and it was determined that the bundled currency totaled $27,000.00. The currency that was found in the brown bank bag in the center console of the Explorer contained a total of $2,732.00[1].

---

[1] The $2,732.00 was forfeited at the state level.

d.  Officers read Wooley his Miranda rights, and Wooley waived his rights and agreed to speak to officers. Wooley admitted to officers that Robert Duane Armstrong ("Armstrong") gave him the duct-taped bundles of money to transport to Texas. Wooley stated that Armstrong is his nephew by marriage, and that he is a marijuana dealer in the metropolitan Detroit area. Wooley admitted that the money found in the brown bank bag was given to him by Armstrong as payment for the trip.

e.  A trace amount of raw marijuana residue was found on the front passenger floor between the seat and the center console of the Explorer. The residue was field tested and resulted in a positive result for marijuana. A blue pharmacy pill bottle with the label torn off was also located inside of the center console. The bottle contained four (4) round tablets imprinted with "OC 80" on them. Officers recognized these pills as 80 mg of OxyContin.

f.  Forensic laboratory testing later confirmed that the residue found in the Explorer was marijuana, and the four (4) pills found inside the pill bottle in the center console of the Explorer was Oxycodone and/or OxyContin.

g.  During the interview with officers, Wooley stated that he had been driving to Michigan one (1) or two (2) times per month to meet with Armstrong. Armstrong would give Wooley anywhere from two (2) to five (5) bundles of currency to transport back to Texas. Wooley further stated that the currency was always

      packaged in heat-sealed plastic and wrapped in black electrical tape or silver duct tape.

h.    Wooley stated that Armstrong regularly traveled to Texas to meet with other individuals and arrange loads of marijuana to be delivered to Michigan. Wooley also said that Armstrong would pay him $5,000 for each trip in which he drove currency from Michigan to Texas. Upon termination of the interview, Wooley signed a Disclaimer of Ownership of Currency form.

i.    Based on their investigation of Armstrong, including information obtained by Wooley, officers obtained a State of Michigan authorized search warrant for Armstrong's residence at 50983 Summit View Drive in Macomb Twp., Michigan.

j.    On or about August 25, 2010, as officers/agents were preparing to execute the search warrant at the Summit View Drive location, Armstrong was observed driving home in a 2006 Chrysler PT Cruiser. This vehicle was stopped by marked police vehicles with the Macomb County Sheriff's Office. Armstrong was patted down and a large amount of U.S. currency was located on his person. An official count later determined that there was $3,198[2] found on Armstrong.

k.    A free air sniff was conducted on the PT Cruiser by K9 Finn, who positively alerted to the presence of narcotics. A probable cause search was conducted on the vehicle. Officers/agents located a small aftermarket toggle switch inside a

---

[2] The $3,198 was forfeited at the state level.

natural void beneath the steering wheel. This was powered electrically and was the opening and closing mechanism for a false compartment inside the dashboard. The front passenger airbag had been removed and this area was a void capable of storing contraband. A motorized piston opened and closed the compartment. Also found inside the vehicle was a "Food Saver" machine as well as numerous plastic bags and rubber bands. These were found in the rear cargo area of the PT Cruiser.

l. A search of the Summit View Drive residence resulted in the discovery and seizure of, amongst other items, the following:

1) One (1) heat sealed plastic bundle of U.S. currency that was rubber banded together and located within a natural void inside of the master bathroom sink vanity. An official count of this currency later determined that there was $39,900 in U.S. currency;

2) One (1) electronic digital scale;

3) Miscellaneous documents; and

4) The Chrysler P.T. Cruiser that Armstrong had been driving.

m. K9 Finn was also utilized during the search of the Summit View Drive residence. K9 Finn positively alerted to the $39,900 in U.S. currency that was found in the master bedroom.

n.   Armstrong has a criminal record, including a prior conviction of possession of marijuana.

## CLAIM

11.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 10, and the subparagraphs thereunder.

12.   The defendant currency is forfeitable to the United States of America pursuant to 21 U.S.C. § 881(a)(6) because it is currency which was furnished or was intended to be furnished in exchange for a controlled substance, and/or because it constitutes proceeds traceable to such an exchange, and/or because it represents moneys used or intended to be used to facilitate a violation of Title 21 of the United States Code.

## RELIEF

WHEREFORE Plaintiff, the United States of America, respectfully requests that a Warrant for Arrest of the defendant currency be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant currency be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

*/s/ Linda Aouate*
LINDA AOUATE
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9587
linda.aouate@usdoj.gov
(P-70693)

Dated: January 4, 2011

## VERIFICATION

I, Matthew Conforti, state that I am a Task Force Officer with the United States Drug Enforcement Administration. I have read the foregoing Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct based upon knowledge possessed by me and/or upon information received from other law enforcement agents.

Dated: 1/4/2011

Matthew Conforti, Task Force Officer
United States Drug Enforcement Administration